# Illinois Official Reports

## Appellate Court

---

**People v. Jackson, 2016 IL App (1st) 143025**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRON JACKSON, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-3025 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CR-22273; the Hon. Noreen Valeria Love, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Sharon Goott Nissim, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Margaret G. Lustig, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Hall and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a jury trial, defendant Darron Jackson, age 16 at the time of the offense, was convicted as an adult of the first degree murder of Kenneth Porter and of personally discharging a firearm that caused another's death. He was subsequently sentenced to 50 years in the Illinois Department of Corrections (IDOC).

¶ 2    After his conviction was affirmed and his first postconviction petition was dismissed as frivolous and patently without merit, defendant filed a motion for leave to file a successive postconviction petition, arguing (1) that a 50-year sentence for a minor violates the eighth amendment's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII),[1] pursuant to recent decisions concerning minors by the United States Supreme Court, such as *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), and (2) that the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2002)) violates due process, the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11),[2] and the eighth amendment (U.S. Const., amend. VIII).

¶ 3    The trial court denied defendant leave to appeal, and it is this order that is at issue before us. For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5    The State's evidence at trial showed that, on September 10, 2003, at 10:30 a.m., defendant shot and killed Kenneth Porter as Porter was standing in the middle of an intersection at Madison Street and Fourth Avenue, in Maywood, Illinois. There are no issues raised on this appeal concerning the evidence at trial. This court has already discussed the evidence at trial in both our Rule 23 orders affirming his conviction on appeal (*People v. Jackson*, No. 1-04-3656 (2007) (unpublished order under Supreme Court Rule 23)) and affirming the dismissal of his first postconviction petition (*People v. Jackson*, No. 1-08-1546 (2009) (unpublished order under Supreme Court Rule 23)). We incorporate these orders by reference, and we will not repeat here our prior discussion of the evidence at trial. The issues raised on appeal are purely legal issues concerning defendant's sentencing.

¶ 6    After a jury trial, defendant was convicted on September 2, 2004, of first degree murder. The State proceeded on a single charge of enhanced first degree murder which meant that they had to find, beyond a reasonable doubt, that defendant, while armed with a firearm, personally discharged that firearm that proximately caused the death of the victim. The jury was so instructed accordingly and returned a verdict of guilty, and defendant was sentenced by the trial court on September 28, 2004, to 60 years in IDOC.

---

[1]The eighth amendment applies to the states through the fourteenth amendment. *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). The Illinois Supreme Court has held that "the Illinois proportionate penalties clause is co-extensive with the eighth amendment's cruel and unusual punishment clause." *People v. Patterson*, 2014 IL 115102, ¶ 106.

[2]Although section 11 does not contain the phrase "proportionate penalties," it is commonly referred to in our case law as "the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11)." *People v. Ligon*, 2016 IL 118023, ¶ 1. Section 11 states, in relevant part, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

¶ 7    At the sentencing hearing on September 28, the assistant State's Attorney (ASA) observed that defendant was subject to a mandatory firearm enhancement, which provided that "25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."[3] As a result, the minimum possible sentence was 45 years, and the maximum was natural life. The ASA asked for natural life. The trial court imposed a sentence of 60 years, which the trial court noted would be served at 100% of the time.[4]

¶ 8    On appeal, this court affirmed defendant's conviction but reduced his sentence from 60 to 50 years. *Jackson*, No. 1-04-3656 (2007) (unpublished order under Supreme Court Rule 23). A year after his appeal, defendant retained counsel,[5] who filed a postconviction petition on March 24, 2008, and a further amended petition on April 11, 2008. On May 23, 2008, the trial court dismissed the amended postconviction petition at the first stage as frivolous and patently without merit, and this court affirmed the dismissal on appeal. *Jackson*, No. 1-08-1546 (2009) (unpublished order under Supreme Court Rule 23).

¶ 9    On May 15, 2014, defendant filed a *pro se* motion for leave to file his first successive postconviction petition, arguing that, since his claims were based on recent changes in the law announced in *Miller*, 567 U.S. ___, 132 S. Ct. 2455, and related cases, he could not have raised these claims in his direct appeal or in his original postconviction petition, which was filed in 2008.

¶ 10   In his *pro se* motion and accompanying petition, defendant argued, first, that his 50-year sentence was a *de facto* life sentence, because the sentence exceeded his life expectancy.[6] He argued that his sentence, which included no eligibility for parole, was, in effect, a life sentence without parole and thus a violation of the eighth amendment's prohibition of cruel and unusual

---

[3]The firearm enhancement provision, which applied to defendant's sentence, stated in relevant part that "if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life *shall* be added to the term of imprisonment imposed by the court." (Emphasis added.) 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002). However, the law was changed this year so that the enhancement is no longer mandatory for individuals under age 18, such as defendant. Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same).

[4]The truth in sentencing statute, which applied to defendant's sentence, provided in relevant part that "a prisoner who is serving a term of imprisonment for first degree murder *** *shall* receive no good conduct credit and shall serve the entire sentence imposed by the court." (Emphasis added.) 730 ILCS 5/3-6-3(a)(2)(i) (West 2002). The quoted section reads exactly the same today, substituting only the word "sentence" for the words "good conduct." See Pub. Act 99-642, § 560 (eff. July 28, 2016) (amending 730 ILCS 5/3-6-3).

[5]In the March 24, 2008, petition, counsel stated that he was retained less than one month before.

[6]In his petition, defendant argued that, based on statistics from the Center for Disease Control and Prevention, his life expectancy was 60 to 63.8 years. In his brief to this court, he stated: "The actual life expectancy for somebody born in 1987 is 64.7 years, not 60 to 63.8 years, as Jackson wrote in his petition." Although this has no effect on today's decision, this court visited the website for the Center for Disease Control and Prevention, which contained an "expectation of life" table for the year 2011. A person born in 1987 would be 24 in the year 2011. According to the table, which was divided into five-year increments, a black man, age 25 in 2011, could expect to live another 49 years, for a total life expectancy of 74 years. Centers for Disease Control and Prevention, National Vital Statistics Reports, Vol. 64, No. 11, at 3 (Sept. 22, 2015), at http://www.cdc.gov/nchs/data/nvsr/nvsr64_11.pdf. Seventy-four years would be 8 years after defendant's expected release age of 66 years old.

punishment, as that term has been recently interpreted by the United States Supreme Court in *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460 ("mandatory life without parole for those under the age 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments' "). Defendant argued that, if mandatory life without parole for a juvenile does not serve any "penological" goals then neither does a *de facto* life sentence without parole. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2465 ("the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes").

¶ 11    Defendant argued, second, that the automatic transfer provision of the Juvenile Court Act of 1987 violates federal and state due process, the eighth amendment and the proportionality clause of the Illinois Constitution, particularly when combined with the firearm enhancement (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002)),[7] and the truth in sentencing statutes (730 ILCS 5/3-6-3(a)(2)(i) (West 2002)).[8]

¶ 12    On August 29, 2014, the trial court denied defendant leave to file a successive postconviction petition, and on October 23, 2014, this court allowed defendant's late notice of appeal.

¶ 13                                                   ANALYSIS

¶ 14    On this appeal, defendant claims that the trial court erred in denying his motion for leave to file his first successive postconviction petition, because recent changes in the law prevented him from filing his claims earlier. For the following reasons, we affirm.

¶ 15                                    I. Stages of a Postconviction Petition

¶ 16    Although the issue before us is the very preliminary question of whether defendant's petition can even be filed, we provide here a summary of the stages to show how the subsequent process sheds light on this preliminary step.

¶ 17    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a statutory remedy for criminal defendants who claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not intended to be a substitute for an appeal; instead, it is a collateral proceeding that attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 18    The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition that is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 19    However, for a successive petition to even be filed, the trial court must first determine whether the petition (1) states a colorable claim of actual innocence (*Edwards*, 2012 IL

---

[7]See footnote 3 for a description of the firearm enhancement provision, which applied to defendant's sentence (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002)), and subsequent changes. Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same).

[8]See footnote 4 for a description of the truth in sentencing statute. 730 ILCS 5/3-6-3(a)(2)(i) (West 2002).

111711, ¶ 28) or (2) establishes cause and prejudice (*People v. Smith*, 2014 IL 115946, ¶ 35). This standard is higher than the normal first-stage "frivolous or patently without merit" standard applied to initial petitions. *Edwards*, 2012 IL 111711, ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35 ("the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act").

¶ 20     Since a filed successive petition has already satisfied a higher standard, the first stage is rendered unnecessary and the successive petition is docketed directly for second-stage proceedings. See *People v. Sanders*, 2016 IL 118123, ¶¶ 25, 28 (with a successive petition, the initial issue before the trial court is whether it "should be docketed for second-stage proceedings"); *People v. Wrice*, 2012 IL 111860, ¶ 90 ("reversing the trial court's order denying leave to file his second successive postconviction petition and remand[ing] to the trial court for *** second-stage postconviction proceedings"); *People v. Jackson*, 2015 IL App (3d) 130575, ¶ 14 ("When a defendant is granted leave to file a successive postconviction petition, the petition is effectively advanced to the second stage of postconviction proccedings."); *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 1 (reversing the trial court's denial of the defendant's motion for leave to file a successive petition and remanding for second-stage proceedings).

¶ 21     If a trial court permits a successive petition to be filed or does not dismiss an initial petition at the first stage, the petition then advances to the second stage, where counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33; *Wrice*, 2012 IL 111860, ¶ 90 (after reversing the trial court's denial of leave to file a successive petition, the supreme court remanded "for appointment of postconviction counsel and second-stage postconviction proceedings"). After counsel determines whether to amend the petition, the State may file either a motion to dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2012); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

¶ 22     "The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagala*, 2013 IL 113688, ¶ 35.

¶ 23     Both the second stage and a motion for leave to file a successive petition require a review of "the petition and any accompanying documentation." *Edwards*, 197 Ill. 2d at 246 (second-stage review); *Edwards*, 2012 IL 111711, ¶ 24 (motion for leave to file a successive petition). For the second stage to not be superfluous for a successive petition, it must be that the "substantial showing" required at the second stage is greater than the "probability" required for a successive petition to receive leave for filing. *Smith*, 2014 IL 115946, ¶ 29 (expressing a desire not to "render the entire three-stage postconviction process superfluous").

¶ 24     If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a

third-stage evidentiary hearing, the trial court acts as factfinder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34. This third stage is the same for both initial and successive petitions. *Cf. Smith*, 2014 IL 115946, ¶ 29 ("The legislature clearly intended for further proceedings on successive postconviction petitions.").

¶ 25                                II. Successive Petition

¶ 26    Although our supreme court has made clear that the Act contemplates only one postconviction proceeding, "[n]evertheless, [the supreme] court has, in its case law provided two bases upon which the bar against successive proceedings will be relaxed" (*Edwards*, 2012 IL 111711, ¶ 22). Those two bases are (1) cause and prejudice and (2) actual innocence. *Edwards*, 2012 IL 111711, ¶ 22. Defendant has alleged only the first on the instant appeal, so we discuss only this basis below.

¶ 27    Under the cause-and-prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 28    Our supreme court has held that "a defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirement if the motion adequately alleges facts demonstrating cause and prejudice." *Smith*, 2014 IL 115946, ¶ 34. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Smith*, 2014 IL 115946, ¶ 35.

¶ 29                                III. Standard of Review

¶ 30    Next, we discuss the appropriate standard of review for defendant's claim of cause and prejudice.

¶ 31    In *Smith*, the issue was whether the Act prohibited the denial of leave when the pleadings of the petition made an " 'arguable' " showing of cause and prejudice. *Smith*, 2014 IL 115946, ¶ 25 (quoting the defendant's petition). The *Smith* court observed that the standard of review for "this issue of statutory construction" was *de novo*. *Smith*, 2014 IL 115946, ¶ 21. However, the *Smith* court did not explicitly state, after resolving this issue of statutory construction, whether the standard of review for a trial grant or denial of leave to file a successive petition was then also *de novo*.

¶ 32    Since cause-and-prejudice claims may fail either as a matter of law or due to an insufficiency of the petition and supporting documents, we conclude, as have other appellate courts, that a *de novo* standard of review also applies. *People v. Diggins*, 2015 IL App (3d) 130315, ¶ 7(applying a *de novo* standard of review to the trial court's denial of the defendant's motion to file a successive petition alleging cause and prejudice, because this issue is "resolved on the pleadings" alone); *People v. Crenshaw*, 2015 IL App (4th) 131035, ¶ 38 (applying a *de novo* standard of review to the trial court's denial of the defendant's motion to file a successive petition alleging cause and prejudice). See also *People v. Wrice*, 2012 IL 111860,

¶ 50 (applying a *de novo* standard of review to the State's arguments concerning lack of prejudice to the defendant, since these "arguments raise purely legal issues").

¶ 33     When our review is limited to documentary materials, as it is here, then our review is generally *de novo*. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154 (2007) ("Where the circuit court does not hear testimony and bases its decision on documentary evidence, the rationale underlying a deferential standard of review is inapplicable and review is *de novo*."); *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285 (2007) (where the trial court "did not conduct an evidentiary hearing" or "make any findings of fact," and "relied on the parties' oral argument and the record," "we review the court's ruling on this issue *de novo*").

¶ 34     Thus, we will apply a *de novo* review to both of defendant's claims. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *In re N.H.*, 2016 IL App (1st) 152504, ¶ 50 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 35                              IV. The Record

¶ 36     The next question is what we are permitted to review. In *Smith*, our supreme court held that "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of *the successive petition and the documentation submitted by the petitioner*, that the claims alleged by the petitioner fail as a matter of law or where *the successive petition with supporting documentation* is insufficient to justify further proceedings." (Emphases added.) *Smith*, 2014 IL 115946, ¶ 35.

¶ 37     Thus, we must certainly consider the *pro se* petition itself and any supporting documentation that defendant provided. *Edwards*, 2012 IL 111711, ¶ 24. However, the *Smith* court left open the question of whether we and the trial court may consider the underlying record. The *Smith* court stated: "The parties have not argued or briefed whether the trial court may consider the record in ruling on a petition brought under section 122-1(f) of the Act. Accordingly, we do not address that issue." *Smith*, 2014 IL 115946, ¶ 35 n.3.[9]

¶ 38     After making this observation, the *Smith* court then proceeded to discuss what happened at trial. *Smith*, 2014 IL 115946, ¶ 37. However, before discussing the events and statements at trial, the court stated that these facts were "undisputed." *Smith*, 2014 IL 115946, ¶ 37. Based on the prior footnote and the court's statement that these facts were undisputed, it is unclear whether these facts were in the petition and supporting documentation before the court.

¶ 39     As in *Smith*, the *Edwards* court relied primarily on the failings found on the face of the petition and supporting documentation when it affirmed the trial court's denial of leave. In *Edwards*, the supreme court found "no indication" that the defendant had tried to subpoena his alibi witnesses, who were both known to the defendant at the time of trial, and thus their affidavits did not qualify as "newly discovered" evidence. *Edwards*, 2012 IL 111711, ¶¶ 35-37. The supreme court stated that "there was no attempt to subpoena" and "no explanation as to why." *Edwards*, 2012 IL 111711, ¶ 37. If the petition had alleged an attempt and offered an explanation, then there would have been some "indication." *Edwards*, 2012 IL 111711, ¶¶ 36-37. Thus, the failings found were apparent on the face of the petition itself.

---

[9]Section 122-2.1 provides that, "after the filing" of the petition, "the court may examine the court file of the proceeding in which the petitioner was convicted." 725 ILCS 5/122-2.1 (West 2014). However, in the instant appeal, we are considering a petition that has not yet been filed, which explains why the *Smith* court observed that this was an open issue.

¶ 40　　In addition, the *Edwards* court found that the codefendant's affidavit did not raise a colorable claim of actual innocence when the defendant was convicted under a theory of accountability and the affidavit did "not assert that petitioner was not *present* when the shooting took place." (Emphasis in original.) *Edwards*, 2012 IL 111711, ¶¶ 38-39. Again, the failing found was apparent on the face of the documentation itself.

¶ 41　　As of today, there are no published Illinois cases discussing *Smith*'s footnote 3 (*Smith*, 2014 IL 115946, ¶ 35 n.3), except for one by the same author of this opinion raising the same issue. *People v. Jones*, 2016 IL App (1st) 123371, ¶ 79.

¶ 42　　Until our supreme court resolves this issue, we will rely primarily on the petition and its supporting documentation in deciding this preliminary question of whether the petition may even be filed. In addition, we will take judicial notice of our prior opinions and orders. *Shotts*, 2015 IL App (4th) 130695, ¶¶ 7, 71. See also *Village of Riverwoods v. BG Ltd. Partnership*, 276 Ill. App. 3d 720, 724 (1995) (a court may properly take judicial notice of publicly available records "where such notice will aid in the efficient disposition of a case" (cited with approval by *Wackrow v. Niemi*, 231 Ill. 2d 418, 421 n.1 (2008))); *In re McDonald*, 144 Ill. App. 3d 1082, 1084 (1986) (a court may take judicial notice of matters of record in other cases in the same court).

¶ 43　　From the perspective of the orderly administration of justice, it makes sense to review primarily at this very preliminary stage the documents filed by defendant rather than the entire trial court record. As we explained in the prior section on the postconviction stages, the postconviction process provides other stages where a petition may be more substantially judged. *Edwards*, 197 Ill. 2d at 246 ("a substantial showing" is not required until the second stage). The *Smith* court observed: "From a practical standpoint, if a petitioner is required to establish cause and prejudice conclusively prior to being granted leave to file a successive petition, it may render the entire three-stage postconviction process superfluous." *Smith*, 2014 IL 115946, ¶ 29 ("The legislature clearly intended for further proceedings on successive petitions.").

¶ 44　　Both *Edwards* and *Smith* discussed the amount of documentation that the defendant must submit at this preliminary stage. In *Edwards*, the supreme court stated: "Defendant not only has the burden to obtain leave of court, but also 'must submit enough in the way of documentation to allow a circuit court to make that determination.' " *Edwards*, 2012 IL 111711, ¶ 24 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)). In *Smith*, the supreme court observed that "the legislature intended that the cause-and-prejudice determination be made on the pleadings prior to the first stage," that defendant must "allege[ ] facts demonstrating cause and prejudice," and that he must " 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *Smith*, 2014 IL 115946, ¶¶ 33-35 (quoting *Tidwell*, 236 Ill. 2d at 161).

¶ 45　　Thus, we will now review defendant's two claims primarily in light of the documentation he submitted, as well as our prior opinions and orders.

¶ 46　　　　　　　　　　　　　　　　　V. Cause

¶ 47　　As we noted above, under the cause-and-prejudice test, a defendant must first establish cause for his or her failure to raise the claim earlier. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). Defendant argues that he established cause because he could not have raised claims based on *Miller* in his original 2008 petition,

when *Miller* was not even decided until 2012. See also *People v. Nieto*, 2016 IL App (1st) 121604, ¶ 39 ("Illinois procedural rules regarding forfeiture cannot be applied to juvenile defendants raising claims under *Miller*."); *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 48 (defendant was not barred from raising his challenge on appeal from the denial of leave to file a successive petition, where "*Miller* was not available for earlier postconviction proceedings"); *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶ 19 (*Miller* "changed the law and give postconviction petitioners cause for failing to raise the issue in proceedings that preceded" it).

¶ 48    In addition, in 2014, the Illinois Supreme Court held in *People v. Davis*, 2014 IL 115595, ¶¶ 28, 42, both that *Miller* applied retroactively and that "*Miller*'s new substantive rule constitutes 'cause' because it was not available earlier." Similarly, the United States Supreme Court held two years later that *Miller* applied retroactively. *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 735-36 (2016) (after *Miller*, juveniles who received mandatory or automatic life without parole "must be given the opportunity to show their crime did not reflect irreparable corruption" as opposed to transient immaturity).

¶ 49    On appeal, the State does not argue that defendant failed to establish cause. Instead, the State argues that "irrespective of whether or not defendant can show the requisite 'cause,' he cannot establish any 'prejudice' " because (1) *Miller* does not apply to defendant's sentence of a certain number of years and (2) Illinois courts have previously rejected other constitutional challenges to the automatic transfer provision.

¶ 50    Thus, we will proceed to consider next whether defendant has established prejudice, considering each of his claims separately: his claim that his 50-year sentence violates the eighth amendment and his claim that the automatic transfer provision violates due process, the proportionate penalties clause, and the eighth amendment.

¶ 51                                    VI. 50-Year Sentence

¶ 52    Defendant argues that his 50-year sentence violates the eighth amendment's ban on cruel and unusual punishments, particularly in light of the fact that our legislature recently changed the law governing firearm enhancements. When defendant was sentenced, a firearm enhancement was mandatory. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002). However, effective this year, the legislature specifically added a provision, so that firearm enhancements are no longer mandatory for juvenile defendants. Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same).

¶ 53    Effective this year, our legislature made significant changes to the law governing the sentencing of juvenile defendants. First, the legislature raised the age under the automatic transfer statute from 15 to 16 years old, so that 15-year-olds are no longer subject to automatic transfer to adult court for first degree murder and other crimes. Pub. Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a) (West 2014)).[10] Second, the legislature eliminated the mandatory firearm enhancement for juvenile defendants. Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same). The enhancement is now discretionary for juveniles. Third, the legislature eliminated the mandatory life sentences that had been previously required for juveniles who had murdered

---

[10]This change has no effect on the issues at bar because defendant was 16, not 15, years old at the time of the offense.

individuals in certain categories, such as police officers and emergency medical technicians. Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(c)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same). Instead of the mandatory life sentence previously required for this type of first degree murder, the legislature required the imposition of "not less than 40 years of imprisonment." Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(c)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same).

¶ 54     When defendant was sentenced, he was subject to a sentencing range with a minimum of 45 years and a maximum of natural life. The trial court sentenced him within that range, to a sentence of 60 years, which the appellate court reduced to 50 years. Today, for the same offense, defendant would have faced a sentencing range with a minimum of 20 years (730 ILCS 5/5-4.5-20(a) (West 2014)) and a maximum of natural life.[11]

¶ 55     Defendant's 50-year sentence is within today's permissible sentencing range of 20 years to natural life. Thus, defendant's sentence is not excessive when measured against the standard of today's statutes, which were newly revised by our legislature in light of the recent changes in case and statutory law that defendant now argues on appeal.

¶ 56     If our supreme court[12] believes that our legislature's changes did not go far enough to comply with recent United States Supreme Court law or that the changes should apply retroactively to defendant despite an express legislative statement to the contrary,[13] that is for our highest court to decide. The decision to resentence every similarly situated defendant should not be made at the appellate court level. A finding of prejudice on the ground that defendant's 50-year sentence violated the eighth amendment would both call into question the new sentencing scheme that our legislature just adopted in response to *Miller*, and would prompt a call to resentence every juvenile serving a sentence of 50 years or more.

¶ 57     If an Illinois court was going to hold that a *de facto* life sentence qualifies for consideration under *Miller*, then we would need a consistent and uniform policy on what constitutes a *de facto* life sentence. Is it simply a certain age upon release? If so, is it age 65, as defendant

---

[11]The maximum sentence for first-degree murder is typically 60 years. 730 ILCS 5/5-4.5-20(a) (West 2014). However, in its discretion, the trial court may impose on a juvenile a firearm enhancement of 25 years or up to a term of natural life. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West Supp. 2015) ("if [ ] during the commission of the offense, the person personally discharged a firearm that proximately caused *** death *** 25 years or up to a term of natural life shall be added to the term of imprisonment"); 730 ILCS 5/5-4.5-105(b) (West Supp. 2015) (the trial court may, in its discretion, impose or decline to impose on a juvenile any otherwise applicable firearm enhancement).

[12]Compare *People v. Wilson*, 2016 IL App (1st) 141500, ¶ 35 (observing that the task of drawing a different line is up to "the Illinois or United States Supreme Court not the appellate court, in a case where a 17-year-old was sentenced to 31 years in prison), with *People v. Nieto*, 2016 IL App (1st) 121604, ¶¶ 4, 12, 14 n.1, 49 (remanding for resentencing, where a 17-year-old was sentenced to 78 years in prison with an expected release age of 94 and "where the record affirmatively indicates that the trial court has deviated from the principles" governing the sentencing of juveniles).

[13]The legislature's 2016 changes state specifically that they apply only "[o]n or after the effective date of this amendatory Act of the 99th General Assembly, when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense." Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(a)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same). See also *People v. Wilson*, 2016 IL App (1st) 141500, ¶ 16 (interpreting this provision, this court held that, "based on its plain language, the legislature indicated a prospective application of the statute").

seems to argue for in his appellate brief, or 90?[14] Should the age vary by ethnicity, race or gender? If we are going to consider more than age, what societal factors or health concerns should impact our assessment of a *de facto* life sentence. These are policy considerations that are better handled in a different forum.

¶ 58 In light of our supreme court's holding in *Davis* that *Miller* permits a juvenile sentence of natural life without parole so long as the sentence is discretionary (*Davis*, 2014 IL 115595, ¶ 43),[15] this court cannot find prejudice based on the ground that defendant's 50-year sentence is excessive or in violation of the eighth amendment's cruel and unusual penalties clause. See also *Davis*, 2014 IL 115595, ¶ 32 ("We hold that *Miller* did not render the statutory scheme under which defendant was sentenced facially unconstitutional."). As our supreme court has observed, "leave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law." *Smith*, 2014 IL 115946, ¶ 35.

¶ 59                                  VII. Automatic Juvenile Transfer

¶ 60 Defendant also claims that the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2002)) violates due process, the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), and the eighth amendment (U.S. Const., amend. VIII).

¶ 61 The automatic juvenile transfer provision provides, in relevant part, that:

"(1)(a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 16 years of age and who is charged with: (i) first degree murder ***.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130 (West Supp. 2015).

¶ 62 At the time of the offense in question, the provision provided, in relevant part, that:

"(1) (a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with first degree murder ***.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130 (West 2002).

---

[14]Compare *Nieto*, 2016 IL App (1st) 121604, ¶¶ 14 n.1, 49 (remanding for resentencing where the juvenile's expected release age was 94) and *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶¶ 1-2 (reversing the denial of leave to file a successive petition where a 17-year-old received a 100-year sentence), with *Wilson*, 2016 IL App (1st) 141500, ¶ 35 (rejecting a *Miller* challenge where a 17-year-old received a 31-year sentence). See also *People v. Reyes*, 2016 IL 119271, ¶¶ 10, 12 (*per curiam*) (remanding for resentencing where the juvenile's expected release age was 105, while observing that a 32-year sentence is "not a *de facto* life sentence" for a 16-year-old).

[15]See also *Montgomery*, 577 U.S. at ___, 136 S. Ct. at 736 (holding that the *Miller* court did not bar life without parole, although it concluded that "the sentence of life without parole is disproportionate for the vast majority of juvenile offenders" and that juveniles "must be given the opportunity to show their crime did not reflect irreparable corruption").

¶ 63    The key difference between the two provisions is that the former provision applied to 15-year-old minors, whereas the current provision applies only to minors who are 16 years or older. However, as we observed above, this difference has no effect on our case, because the minor in the instant case was 16 years old at the time of the offense.

¶ 64    On appeal, defendant argues that we should find that the Illinois Supreme Court's decision in *People v. Patterson*, 2014 IL 115102, was "incorrectly decided." In *Patterson*, our supreme court rejected due process challenges to the automatic transfer statute, as well as challenges made under the eighth amendment (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). *Patterson*, 2014 IL 115102, ¶¶ 35, 89, 98, 100, 106. We decline defendant's invitation to find that *Patterson* was wrongly decided. *Wilson*, 2016 IL App (1st) 141500, ¶ 29 (applying *Patterson*, after the 2016 United States Supreme Court decision in *Montgomery*, 577 U.S. ___, 136 S. Ct. 718).[16]

¶ 65                                         CONCLUSION

¶ 66    On this appeal, defendant challenged the trial court's denial of his motion for leave to file a successive petition. His motion and petition had argued (1) that a 50-year sentence for a minor violates the eighth amendment's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII), pursuant to recent decisions concerning minors by the United States Supreme Court and (2) that the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2002)) violates due process, the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), and the eighth amendment (U.S. Const., amend. VIII).

¶ 67    For the foregoing reasons, we do not find persuasive defendant's arguments that he established the prejudice needed to file a successive petition. As a result, we affirm the trial court's denial of leave.

¶ 68    Affirmed.

---

[16]In his reply brief, defendant states that he "recognizes that this Court is bound by *Patterson*, but maintains, given the continuing evolving law in this area and in order to preserve this issue for further appeals, that *Patterson* was wrongly decided." Similarly, this court respects the need to preserve the issue for further appeal, while remaining bound to apply *Patterson*.