2021 IL App (1st) 192596-U
Order filed: September 23, 2021

FIRST DISTRICT
FOURTH DIVISION

No. 1-19-2596

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 84 CR 10732 |
| | ) | |
| ROOSEVELT CLAY, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Denial of defendant's request for leave to file a successive postconviction petition is affirmed where he failed to satisfy the cause-and-prejudice test and failed to show that the evidence he offered in support of his claim of actual innocence was newly discovered.

¶ 2    Defendant-appellant, Roosevelt Clay, appeals from the circuit court's order denying him leave to file a successive petition under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). For the following reasons, we affirm.

¶ 3    This matter has been the subject of several prior appeals. *People v. Clay*, 211 Ill. App. 3d 291 (1990); *People v. Clay*, No. 1-97-3940 (1998) (unpublished order under Illinois Supreme Court Rule 23); *People v. Clay*, 379 Ill. App. 3d 470 (2008); *People v. Clay*, 2014 IL App (1st)

121074-U. Much of the relevant history of this matter can be found in our prior dispositions of those appeals, and we therefore restate here only the facts necessary to resolve the present appeal.

¶ 4      Defendant was tried in 1988 for the 1975 murders of Dr. Lawrence Gluckman and two of Dr. Gluckman's patients, Minnie and Tressie Harris. At trial, the State presented evidence of defendant's inculpatory statements. Specifically, the record shows that in 1983 defendant was charged with two separate, unrelated armed robberies. After he was found guilty of the first armed robbery, defendant reached out to the Federal Bureau of Investigations (FBI) and offered to provide information on other crimes in exchange for assistance with obtaining favorable sentencing on both armed robbery charges, to the second of which defendant ultimately plead guilty. Defendant thereafter provided information to FBI Agent Scott Jennings and Chicago Police Detectives Fred Hill and Anthony Katalinic regarding a 1982 murder in Wisconsin and the three 1975 murders at issue here. Defendant was found guilty of all three murders in this matter and sentenced to an indeterminate term of 60 to 120 years' imprisonment.

¶ 5      On direct appeal, defendant contended that the trial court improperly denied his motion to suppress the inculpatory statements after improperly concluding that they were voluntary and not made during plea negotiations, and that his motion for a new trial was improperly denied where defendant presented new evidence which he contended proved he made the inculpatory statements during plea negotiations. The new evidence included evidence that defendant was indicted for the Wisconsin murder after his conviction in this matter. During discovery in that case he learned that Jennings had spoken to a Wisconsin police chief about the Wisconsin murder on the same day that defendant first admitted to Jennings that he was involved in that crime. This conversation was documented in an attached 1983 Wisconsin police report. Also attached to the motion was Jennings' testimony at defendant's 1989 Wisconsin murder trial. Each reflected that defendant was

"trying" to work out a deal to lessen the armed robbery charges pending against him. This court rejected defendant's arguments and affirmed his convictions. *Clay*, 211 Ill. App. 3d at 304.

¶ 6    In 1997, defendant filed an initial and an amended postconviction petition which were summarily dismissed by the circuit court. We granted appellate counsel's motion for leave to withdraw as counsel and affirmed the circuit court's judgement. *Clay*, No. 1-97-3940 (1998). Another postconviction petition was filed in 2004, asserting that Frank Love—a key witness for the State—had lied about his motive for testifying at defendant's trial. The State conceded error, the circuit court granted defendant a new trial, and a second trial was held in 2005.

¶ 7    At the conclusion of that trial, defendant was once again convicted of three counts of murder and sentenced to an indeterminate term of 60 to 120 years' imprisonment. At trial, the State once again relied upon defendant's inculpatory statements. On direct appeal, we affirmed defendant's convictions and sentences over claims that the State was improperly allowed to impeach defendant's trial testimony with his 1989 conviction for the Wisconsin murder and that defendant was provided ineffective assistance of counsel. *Clay*, 379 Ill. App. 3d at 485.

¶ 8    In 2012, defendant filed a postconviction petition which alleged—*inter alia*—due process violations at his second trial resulting from the State's "serial and knowing use of perjury, misconduct and failure to disclose information to Defendant." These allegations once again focused on the testimony of Frank Love. This petition was summarily dismissed, and on appeal we granted appellate counsel's motion for leave to withdraw as counsel and affirmed the circuit court's judgement. *Clay*, 2014 IL App (1st) 121074-U.

¶ 9    Finally, in 2018 defendant filed the motion for leave to file a successive postconviction petition, pursuant to the Act, at issue here. Although styled a motion for leave to file, defendant clearly intended this document to serve as both his request for leave to file and as his proposed

successive petition where: (1) defendant refers to the pleading as his "petition" a total of seven times, (2) the content of the pleading contains both defendant's arguments as to why leave to file should be granted, as well as his substantive arguments as to why postconviction relief should be granted, and (3) in the conclusion, defendant specifically asked the circuit court to "[d]ocket this petition for further proceedings."[1] Defendant also included a request for relief from a void judgment, pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2018).

¶ 10    Therein, as summarized by the circuit court, defendant made the following arguments:

"First, petitioner claims actual innocence, where he only made statements implicating himself in the murders because he believed he was involved in plea negotiations with FBI Agent Jennings regarding his unrelated robbery case. Petitioner further elucidates that he is actually innocent because the State and its agents concealed evidence and engaged in the knowing use of perjury ([t]he 'perjury' petitioner refers to is Jennings' trial testimony, where he testified that there was no plea negotiation underway, and that petitioner volunteered the inculpating statements to attempt to win favor with his robbery cases) in order to obtain a conviction against petitioner. Additionally, petitioner claims prosecutorial misconduct, where the State committed a *Brady* violation when it concealed the fact that two Chicago Police Detectives—Fred Hill and Anthony Katalinic—were corrupt and engaged in systematic misconduct. Lastly, petitioner alleges prosecutorial misconduct where the State knowingly used perjured testimony of FBI Special Agent Scott Jennings and Detective Katalinic. Each of petitioner's convoluted claims is premised on the same

_____

[1]As such, hereinafter we will refer to this pleading as defendant's "petition."

general claim—his incriminating statements should not have been allowed in at trial because they were the result of plea negotiations. Petitioner [also] asserts he has demonstrated cause and prejudice to raise this claim in a successive petition because 'taken together,' the facts in this petition demonstrate that had this information been available at the time of either trial (1988 and 2005), the outcome of those trials would have been different."

¶ 11     In support of these assertions, defendant attached to his petition the following documents: (1) transcripts from the hearings on defendant's motion to suppress at his first trial, (2) a copy of the 1983 Wisconsin police report that defendant had previously attached to the motion for a new trial he filed after his fist trial, and (3) an FBI "302" report dated June 1983, documenting defendant's telephone call to Jennings in which he provided information regarding the Wisconsin murder, but including no information regarding possible plea negotiations.

¶ 12     Thereafter, in September 2018, defendant filed a motion for leave to amend his petition to include four pages of attached documents in support of his contention "that at the time of Mr. Clay's trial in 2005 the State had actual knowledge that Chicago Police Detectives Fred Hill and Anthony Katalinic were corrupt and but for those facts being concealed by the State the outcome of the trial would have been different." These documents appear to be excerpts from a 2006 "special prosecutor's report" originally referenced in the petition, but which defendant claimed he inadvertently failed to attach thereto as exhibits. Within these four pages are brief references to Detectives Hill and Katalinic being subpoenaed, both detectives being identified in a law division case and in a "Special Prosecutor's Memo" as having participated in fabricating evidence, manipulating witnesses and psychological coercion in 1976, and Hill being named as a "torturer

and witness" and thus being potentially indicted for perjury due to his sworn testimony to the contrary in federal court.

¶ 13    In a written order entered in October 2018, the circuit court denied defendant leave to file a successive petition and dismissed his section 2-1401 motion. However, that written order did not address the documents attached to defendant's then-pending motion for leave to amend, and there is nothing in the record reflecting that the motion for leave to amend had been ruled upon at that time. In November 2018, defendant filed a motion for reconsideration, but that motion was also not ruled upon by the circuit court at that time. Then, in September 2019, defendant filed a motion once again asking the circuit court to reconsider its October 2018 decision because: (1) the circuit court's written order had not considered the documents attached to the motion for leave to amend that was pending in October 2018 but not ruled upon, and (2) defendant had previously filed a motion for reconsideration in November 2018, but that motion was also never ruled upon by the circuit court. The circuit court denied defendant any relief in October 2019, finally resolving all the outstanding issues, and this court granted defendant leave to file a late notice of appeal in December 2019.

¶ 14    On appeal, defendant does not challenge the circuit court's denial of any relief he sought pursuant to section 2-1401, and we therefore need not further address that issue. Rather, defendant solely contends that leave to file his successive postconviction petition was improperly denied where he satisfied the cause-and-prejudice test and showed that the evidence he offered in support of his claim of actual innocence was newly discovered evidence and would have changed the result upon retrial. We review a circuit court's ruling on a motion for leave to file a successive postconviction petition *de novo. People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 15    The Act "provides a statutory remedy to criminal defendants who claim that substantial

violations of their constitutional rights occurred at trial" which "is not a substitute for an appeal, but rather, is a collateral attack on a final judgment." *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act provides that "[o]nly one petition may be filed *** without leave of the court." 725 ILCS 5/122-1(f) (West 2018). Accordingly, "a ruling on an initial postconviction petition has *res judicata* effect with regard to all claims that were raised or could have been raised in the initial petition." *People v. Guerrero*, 2012 IL 112020, ¶ 17. Any claim of substantial denial of constitutional rights not raised in an original postconviction petition is waived. 725 ILCS 5/122-3 (West 2018).

¶ 16    Nevertheless, there are "two bases upon which the bar against successive proceedings will be relaxed." *Edwards*, 2012 IL 111711, ¶ 22. "The first basis for relaxing the bar is when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Id*. (quoting *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The cause and prejudice test is now codified in the Act. 725 ILCS 5/122-1(f) (West 2018). Second, a colorable claim of "actual innocence" will permit a successive postconviction petition. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 40 (citing *Edwards*, 2012 IL 111711, ¶ 23). Thus, in order to file a successive petition, the defendant's petition must satisfy the cause-and-prejudice test or it must state a colorable claim of actual innocence. *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 19. "This standard is higher than the normal first-stage 'frivolous or patently without merit' standard applied to initial petitions. [Citations.]" *Id.*

¶ 17    In this case, defendant first asserts that he has satisfied the cause and prejudice test. "It is the defendant's burden to demonstrate both cause and prejudice for each claim raised in his successive petition." *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008). The Act provides that "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to

raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

¶ 18    "[A] defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirement if the motion adequately alleges facts demonstrating cause and prejudice." *People v. Smith*, 2014 IL 115946, ¶ 33. "To meet the cause-and-prejudice test *** requires the defendant to submit 'enough in the way of documentation to allow a circuit court to make that determination.' [Citation.]" *Id.* ¶ 35. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petition fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. [Citations.]" *Id.*

¶ 19    We find that defendant has failed to allege facts demonstrating cause by identifying an objective factor that impeded his ability to raise his specific claims during the initial postconviction proceedings. Specifically, defendant has failed to meet his burden to demonstrate that any of the documents upon which his current claims rely were not available to him at the time he filed his initial postconviction petition following the second trial. We first consider the transcripts from the hearing on defendant's motion to suppress at his first trial and the copy of the 1983 Wisconsin police report, each of which defendant had previously attached to the motion for a new trial he filed after his *first* trial. It is absolutely apparent from the record that defendant had access to these documents prior to the filing of his 2012 initial postconviction petition following his *second* trial.

¶ 20     With respect to the FBI "302" report dated June 1983 and the excerpts from what defendant contends is a 2006 "special prosecutor's report," defendant has offered no information on when he obtained these documents. On its face, the FBI report is dated well before 2012, and—taking defendant's own allegations as true—the special prosecutor's report was completed six years before defendant filed his initial postconviction petition.

¶ 21     Nor has defendant provided any objective factor that impeded his ability to raise the claims based upon these documents in his initial petition. The only contention in this regard defendant made in his petition was that the "systematic misconduct and corruption" of Hill and Katalinic was not known at the time of his original trial, nor was it "well within the public domain by the 2005 retrial." However, those dates are irrelevant where defendant had the burden of showing cause by identifying an objective factor that impeded his ability to raise a specific claim during his "*initial post-conviction proceedings*." (Emphasis added.) 725 ILCS 5/122-1(f) (West 2018).

¶ 22     Again, it was defendant's burden to demonstrate *both* cause and prejudice. *Thompson*, 383 Ill. App. 3d at 929. Here, defendant has failed to demonstrate cause by identifying an objective factor that impeded his ability to raise his current claims sooner. Because we find that defendant has failed to show cause, we may affirm the circuit court's rejection of this claim on that basis and need not determine whether he also showed prejudice. *People v. Smith*, 2014 IL 115946, ¶ 37.

¶ 23     We next consider defendant's contention that the circuit court improperly denied him leave to file a successive petition because he raised a colorable claim of actual innocence. In *People v. Robinson*, 2020 IL 123849, the Illinois Supreme Court recently set forth the standard for evaluating claims of actual innocence in the context of a motion for leave to file a successive postconviction petition. A request for leave to file a successive petition based on actual innocence should only be denied when it is clear from a review of the petition and supporting documentation, taking as true

all well-pleaded allegations that are not positively rebutted by the trial record, that the petition cannot set forth a colorable claim of actual innocence as a matter of law. *Id.* ¶¶ 44-45. Evidence is not positively rebutted simply because it was contradicted by the evidence at trial. *Id.* ¶ 60. For new evidence to be positively rebutted, the trial record must make clear that no jury could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible. *Id.*

¶ 24    To establish a claim of actual innocence, the supporting evidence must be newly discovered, material and not cumulative, and of such conclusive character as to probably change the result on retrial. *Id.* ¶ 47. Newly discovered evidence is evidence that was discovered after trial, which defendant could not have discovered earlier through the exercise of due diligence. *Id.* Evidence is material if it is relevant and probative of defendant's innocence. *Id.* Noncumulative evidence adds to the information that the jury heard at trial. *Id.* Finally, the conclusive character element, which is the most important element of an actual innocence claim, refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. *Id.*

¶ 25    The *Robinson* court rejected the total vindication or exoneration standard (*id.* ¶ 55) and held that new evidence need not be entirely dispositive to be likely to alter the result on retrial; rather, the new evidence need only place the trial evidence in a different light, thereby undermining the court's confidence in the judgment of guilt. *Id.* ¶ 48. Probability, rather than certainty, is the key for determining whether the jury would reach a different result after considering the prior evidence along with the new evidence. *Id.* Leave of court to file a successive petition should be granted when defendant's supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted him considering the new evidence. *Id.* ¶ 44.

¶ 26    Here, we reject defendant's actual innocence claim for reasons similar to those discussed above. Defendant simply cannot show that the evidence he relies upon is "newly discovered," in that it was discovered after trial and could not have discovered earlier through the exercise of due diligence. It has been repeatedly recognized that—in the context of an actual innocence claim—evidence is not newly discovered unless a defendant demonstrates that he was not aware of it during any prior postconviction proceedings. *Wideman*, 2016 IL App (1st) 123092, ¶ 58; *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 114; *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21; *People v. English*, 403 Ill. App. 3d 121, 133 (2010). For the reasons stated above (*supra*, ¶¶ 19-21), defendant has not met that burden and leave to file a claim of actual innocence was therefore properly denied as it was barred by the doctrine of *res judicata*. *Wideman*, 2016 IL App (1st) 123092, ¶ 62.

¶ 27    Finally, we note that defendant also requested that should we grant him any relief, this matter be reassigned to a different judge upon remand. Because we have rejected defendant's challenges to the circuit court's judgment, we need not address this issue further.

¶ 28    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 29    Affirmed.