2020 IL App (1st) 143025-B
No. 1-14-3025
Modified opinion filed September 3, 2020

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03 CR 22273 |
| DARRON JACKSON, | ) ) | The Honorable Noreen Valeria Love, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Hall and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    After a jury trial, defendant Darron Jackson, age 16 at the time of the offense, was convicted as an adult of the first degree murder of Kenneth Porter and of personally discharging the firearm that caused Porter's death. Defendant was subsequently sentenced to 50 years in the Illinois Department of Corrections (IDOC).

¶ 2   After his conviction was affirmed and his first postconviction petition was dismissed as frivolous and patently without merit, defendant filed a motion for leave to file a successive postconviction petition, arguing (1) that a 50-year sentence for a minor violates the eighth amendment's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII),[1] pursuant to recent decisions concerning minors by the United States Supreme Court, such as *Miller v. Alabama*, 567 U.S. 460 (2012), and (2) that the automatic transfer provision of Illinois's Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2002)) violates the federal and state due process clauses (U.S. Const., amend XIV; Ill. Const. 1970, art. I, § 2), the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11),[2] and the federal eighth amendment (U.S. Const., amend. VIII).

¶ 3   The trial court denied defendant leave to file a successive postconviction petition, and this court affirmed. However, the Illinois Supreme Court issued a supervisory order directing this court to vacate our judgment and to reconsider in light of its recent decision in *People v. Buffer*, 2019 IL 122327. After reconsidering, we reverse and remand for resentencing, for the reasons that we explain below.

¶ 4             BACKGROUND

¶ 5   The State's evidence at trial showed that, on September 10, 2003, at 10:30 a.m., defendant shot and killed Kenneth Porter as Porter was standing in the middle of an intersection at Madison Street and Fourth Avenue, in Maywood, Illinois. This court has

---

[1] The eighth amendment applies to the states through the fourteenth amendment. *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008).

[2] Although section 11 does not contain the phrase "proportionate penalties," it is commonly referred to in our case law as "the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11)." *People v. Ligon*, 2016 IL 118023, ¶ 1. Section 11 states, in relevant part, that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

already discussed the evidence at trial in our Rule 23 orders affirming his conviction on appeal (*People v. Jackson*, No. 1-04-3656 (2007) (unpublished order under to Illinois Supreme Court Rule 23)) and affirming the dismissal of his first postconviction petition (*People v. Jackson*, No. 1-08-1546 (2009) (unpublished order under to Illinois Supreme Court Rule 23)). We incorporate these orders by reference, and we will not repeat here our prior discussion of the evidence at trial. There are no issues raised on this appeal concerning the evidence at trial. The issues raised on appeal are purely legal issues concerning defendant's sentencing.

¶ 6        After a jury trial, defendant was convicted on September 2, 2004, of first degree murder. The State proceeded on a single charge of enhanced first degree murder which meant that the jury had to find, beyond a reasonable doubt, that defendant, while armed with a firearm, personally discharged the firearm that proximately caused the victim's death. The jury was so instructed and returned a verdict of guilty.

¶ 7        At the sentencing hearing on September 28, 2004, the assistant state's attorney (ASA) observed that defendant was subject to a mandatory firearm enhancement, which provided that "25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court."[3] As a result, the minimum possible sentence was 45 years, and the maximum was natural life. The ASA asked for natural life.

¶ 8        The presentence report showed that defendant was 16 years old at the time of the offense and 17 years old at the time of sentencing. Defendant had no prior criminal or

---

[3] The firearm enhancement provision, which applied to defendant's sentence, stated in relevant part that "if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death to another person, 25 years or up to a term of natural life *shall* be added to the term of imprisonment imposed by the court." (Emphasis added.) 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002). However, the law was subsequently changed so that the enhancement is no longer mandatory for individuals under age 18, such as defendant. 730 ILCS 5/5-4.5-105(b) (West 2018).

juvenile arrests or convictions. His parents were married and employed, and defendant lived with them and his siblings until his arrest. Defendant reported no alcohol or drug use problems. In addition, none of his family members had alcohol or drug issues, and none had been incarcerated or placed on probation. Defendant had no children and had attended school regularly until his arrest, receiving mostly A and B grades. The Cook County Jail School verified that defendant was then enrolled in its high school. Prior to his arrest, defendant had worked on Saturdays part-time at a local store for two to three years. Defendant stated that he had been a member of the "Blackstones" gang, but quit when he was arrested. Defendant also stated that he had attended the Keystone Baptist Church " 'all my life.' "

¶ 9        In aggravation, the State read a victim impact statement by the victim's mother, which stated, in part: "[Defendant], I remember you when you were knee high. Now look at you, a murderer, too young to really know what you have done, just a little boy who became a murderer because of a gun." In mitigation, the defense presented the statement of defendant's mother.

¶ 10        The trial court imposed a sentence of 60 years, which the trial court noted would be served at 100% of the time.[4] Before imposing sentence, the trial court's entire remarks were:

> "I have carefully considered factors in aggravation and mitigation, including the victim impact letter of [the victim's mother] and the defendant's mother's letter and the arguments of the lawyers.

---

[4] The truth in sentencing statute, which applied at the time of defendant's sentencing, provided in relevant part that "a prisoner who is serving a term of imprisonment for first degree murder *** *shall* receive no good conduct credit and shall serve the entire sentence imposed by the court." (Emphasis added.) 730 ILCS 5/3-6-3(a)(2)(i) (West 2002). The quoted section reads exactly the same today, substituting only the words "sentence credit" for the words "good conduct credit." 730 ILCS 5/3-6-3(a)(2)(i)(West 2018). However, persons under 21 years of age, who are sentenced after the effective date of the act, are eligible for parole review after serving only 20 years of their sentence. Pub. Act 100-1182, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)).

[Defendant], I recall your testimony in which you stated what happened to [the victim] is no big deal to you. I disagree with you for, you see [the victim] was a human being who was somebody's son, grandson, brother and cousin.

The State proceeded to trial on an enhanced version of first degree murder. The jury not only found you guilty of killing [the victim], but when you did so, you were armed with a firearm and you personally discharged that firearm and it proximately caused the death of [the victim].

Sir, your penalty is 60 years in the [IDOC]. You will serve 100 percent of this time."

¶ 11    Defendant moved to reconsider his sentence, which the trial court denied on November 17, 2004. Defense counsel argued that the defendant's "no big deal" remark did not refer to the shooting itself, but rather referred to the disagreement between defendant and the victim, to show that it would not have been a motive for murder. Denying the motion, the trial court found:

"In mitigation, the defendant has no history of prior delinquency or criminal activity and has led a law abiding life for a substantial period of time before the commission of the present crime.

In aggravation, the evidence revealed the Defendant shot the victim as he walked from school. Also, the evidence established that this assault was not provoked. The victim was not armed. There were no fighting or threatening words. Finally, the Defendant fled the scene after the attack.

Once again, the Court has weighed the Defendant's rehabilitation potential and the seriousness of the offense. In addition, the Court considered the Defendant's age,

5

the nature of the crime, the Defendant's educational and family background, and the nature and character of the Defendant himself, including his lack of criminal background, the Defendant's demeanor and character, mental habits and social environment.

The Court finds the sentence of sixty years in the [IDOC] is a proper and appropriate sentence, that the sentence is necessary to deter others from committing the same or like offense; that the Defendant's criminal conduct was egregious; and that the Defendant's act was premeditated and executed in a manner which he planned or predicted; that the character and attitude of the Defendant indicated that he is likely to commit another crime."

¶ 12     On appeal, this court affirmed defendant's conviction but reduced his sentence from 60 to 50 years. *Jackson*, No. 1-04-3656 (unpublished order under to Illinois Supreme Court Rule 23). We observed that defendant was a 16-year old with "no previous criminal history caught up in a street gang." *Jackson*, slip op. at 23. Finding that his 60-year sentence was "close to" a *de facto* life sentence, we reduced his sentence by 10 years to make it less than a life sentence and to allow for rehabilitative potential. *Jackson*, slip op. at 23.

¶ 13     A year after his direct appeal, defendant retained counsel,[5] who filed a postconviction petition on March 24, 2008, and further amended the petition on April 11, 2008. On May 23, 2008, the trial court dismissed the amended postconviction petition at the first stage as frivolous and patently without merit, and this court affirmed the dismissal on appeal. *Jackson*, No. 1-08-1546 (unpublished order under Illinois Supreme Court Rule 23).

---

[5] In the March 24, 2008, petition, counsel stated that he was retained less than one month before.

¶ 14            On May 15, 2014, defendant filed a *pro se* motion for leave to file his first successive postconviction petition, arguing that, since his claims were based on recent changes in the law, he could not have raised these claims in his direct appeal or in his original 2008 postconviction petition.

¶ 15            In his *pro se* motion and accompanying petition, defendant argued, first, that his 50-year sentence was a *de facto* life sentence because the sentence exceeded his life expectancy.[6] He argued that his sentence, which included no eligibility for parole, was, in effect, a life sentence without parole and thus a violation of the eighth amendment's prohibition against cruel and unusual punishment, as that term had been recently interpreted by the United States Supreme Court in *Miller*, 567 U.S. at 465 ("mandatory life without parole for those under the age 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishment' "). Defendant argued that if mandatory life without parole for a juvenile does not serve any "penological" goals, then neither does a *de facto* life sentence without parole. *Miller*, 567 U.S. at 472 ("the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes").

¶ 16            Defendant argued, second, that the automatic transfer provision of the Illinois Juvenile Court Act violates the federal and state due process clauses, the eighth amendment,

_____

[6]In his petition, defendant argued that, based on statistics from the Center for Disease Control and Prevention, his life expectancy was 60 to 63.8 years. In his brief to this court, he stated: "The actual life expectancy for somebody born in 1987 is 64.7 years, not 60 to 63.8 years, as Jackson wrote in his petition." Although this has no effect on today's decision, this court visited the website for the Center for Disease Control and Prevention, which contained an "expectation of life" table for the year 2011. A person born in 1987 would be 24 in the year 2011. According to the table which was divided into five-year increments, a black man, age 25 in 2011, could expect to live another 49 years, for a total life expectancy of 74 years. Centers for Disease Control and Prevention, National Vital Statistics Reports, Vol. 64, No. 11, at 3 (Sept. 22, 2015), http:// www.cdc.gov/nchs/data/nvsr64 _11.pdf [https://perma.cc/N3GU-F4D6]. Seventy-four years would be 8 years after defendant's expected release age of 66 years old.

and the proportionality clause of the Illinois Constitution, particularly when combined with the firearm enhancement (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002))[7] and the truth in sentencing statutes (730 ILCS 5/3-6-3(a)(2)(i) (West 2002)) in effect at the time of his sentencing.[8]

¶ 17        On August 29, 2014, the trial court denied defendant leave to file a successive postconviction petition. On October 23, 2014, this court allowed defendant's late notice of appeal. On September 30, 2016, this court affirmed the trial court's denial, but observed that, "[i]f our supreme court believes that our legislature's changes did not go far enough to comply with recent United States Supreme Court law or that the changes should apply retroactively to defendant ***, that is for our highest court to decide." *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 56. We found that this type of decision "should not be made at the appellate court level" (*Jackson*, 2016 IL App (1st) 143025, ¶ 56), and we asked our highest court to provide "a consistent and uniform policy on what constitutes a *de facto* life sentence." *Jackson*, 2016 IL App (1st) 143025, ¶ 57.

¶ 18        In response, our supreme court found that a sentence of more than 40 years, imposed on a juvenile offender, constitutes a *de facto* life sentence (*Buffer*, 2019 IL 122327, ¶¶ 40-41); and it ordered us to vacate our judgment in *Jackson* (*People v. Jackson*, No. 121527 (Ill. Mar. 25, 2020)). Specifically, the supreme court's supervisory order directed this court

> "to consider the effect of [the supreme court's] opinion in *People v. Buffer*, 2019 IL
>
> 122327, on the issue of whether defendant's sentence constitutes a *de facto* life

---

[7]See *supra* ¶ 7 n.3 for a description of the firearm enhancement provision, which applied to defendant's sentence (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002)) and subsequent changes.

[8] See *supra* ¶ 10 n.4 for a description of the truth in sentencing statute then in effect. 730 ILCS 5/3-6-3(a)(2)(i) (West 2002).

sentence in violation of the Eighth Amendment and *Miller v. Alabama*, 567 U.S. 460 (2012) and determine if a different result is warranted." *Jackson*, No. 121527.

On May 8, 2020, we vacated our prior judgment, and we now reconsider.

¶ 19                                ANALYSIS

¶ 20        Defendant claims that the trial court erred in denying his motion for leave to file his first successive postconviction petition, because recent changes prevented him from filing his claims earlier. For the following reasons, we reverse and remand for resentencing.

¶ 21                I. Stages of a Postconviction Petition

¶ 22        Although the issue before us is the very preliminary question of whether defendant's petition can even be filed, we provide here a summary of the stages to show how the subsequent process sheds light on this preliminary step.

¶ 23        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a statutory remedy for criminal defendants who claim their constitutional rights were violated at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act is not intended to be a substitute for an appeal; instead, it is a collateral proceeding that attacks a final judgment. *Edwards*, 2012 IL 111711, ¶ 21.

¶ 24        The Act provides for three stages of review by the trial court. *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, the trial court may summarily dismiss a petition that is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014); *Domagala*, 2013 IL 113688, ¶ 32.

¶ 25        However, for a successive petition to even be filed, the trial court must first determine whether the petition (1) states a colorable claim of actual innocence (*Edwards*, 2012 IL

111711, ¶ 28) or (2) establishes cause and prejudice (*People v. Smith*, 2014 IL 115946, ¶ 35). This standard is higher than the normal first-stage "frivolous or patently without merit" standard applied to initial petitions. *Edwards*, 2012 IL 111711, ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35 ("the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act").

¶ 26    Since a filed successive petition has already satisfied a higher standard, the first stage is rendered unnecessary, and the successive petition is docketed directly for second-stage proceedings. See *People v. Sanders*, 2016 IL 118123, ¶¶ 25, 28 (with a successive petition, the initial issue before the trial court is whether it "should be docketed for second-stage proceedings"); *People v. Wrice*, 2012 IL 111860, ¶ 90 ("reversing the trial court's order denying leave to file his second successive postconviction petition and remand[ing] to the trial court for *** second-stage postconviction proceedings"); *People v. Jackson*, 2015 IL App (3d) 130575, ¶ 14 ("When a defendant is granted leave to file a successive postconviction petition, the petition is effectively advanced to the second stage of postconviction proccedings."); *People v. Almodovar*, 2013 IL App (1st) 101476, ¶ 1 (reversing the trial court's denial of the defendant's motion for leave to file a successive petition and remanding for second-stage proceedings).

¶ 27    At the second stage, counsel is appointed if a defendant is indigent. 725 ILCS 5/122-4 (West 2014); *Domagala*, 2013 IL 113688, ¶ 33; *Wrice*, 2012 IL 111860, ¶ 90 (after reversing the trial court's denial of leave to file a successive petition, the supreme court remanded "for appointment of postconviction counsel and second-stage postconviction proceedings"). After counsel determines whether to amend the petition, the State may file either a motion to

dismiss or an answer to the petition. 725 ILCS 5/122-5 (West 2012); *Domagala*, 2013 IL 113688, ¶ 33. At the second stage, the trial court must determine "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

"The second stage of postconviction review tests the legal sufficiency of the petition. Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. In other words, the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *Domagla*, 2013 IL 113688, ¶ 35.

¶ 28 Both the second stage and a motion for leave to file a successive petition require a review of "the petition and any accompanying documentation." *Edwards*, 197 Ill. 2d at 246 (second stage review); *Edwards*, 2012 IL 111711, ¶ 24 (motion for leave to file a successive petition). For the second stage to not be superfluous for a successive petition, the "substantial showing" required at the second stage must be greater than the "probability" required for a successive petition to receive leave for filing. *Smith*, 2014 IL 115946, ¶ 29 (expressing a desire not to "render the entire three-stage postconviction process superfluous").

¶ 29 If the defendant makes a "substantial showing" at the second stage, then the petition advances to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶ 34. At a third-stage evidentiary hearing, the trial court acts as factfinder, determining witness credibility and the weight to be given particular testimony and evidence and resolving any evidentiary

conflicts. *Domagala*, 2013 IL 113688, ¶ 34. This third stage is the same for both initial and successive petitions. *Cf. Smith*, 2014 IL 115946, ¶ 29 ("The legislature clearly intended for further proceedings on successive postconviction petitions.").

¶ 30                    II. Successive Petition

¶ 31      Although our supreme court has made clear that the Act contemplates only one postconviction proceeding,"[n]evertheless, [the supreme] court has, in its case law, provided two bases upon which the bar against successive proceedings will be relaxed" (*Edwards*, 2012 IL 111711, ¶ 22). Those two bases are (1) cause and prejudice and (2) actual innocence. *Edwards*, 2012 IL 111711, ¶ 22. Defendant has alleged only the first on the instant appeal, so we discuss only this basis below.

¶ 32      Under the cause-and-prejudice test, a defendant must establish both: (1) cause for his or her failure to raise the claim earlier; and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 33                    III. Standard of Review

¶ 34      "The denial of a defendant's motion for leave to file a successive postconviction petition is reviewed *de novo*." *People v. Bailey*, 2017 IL 121450, ¶ 13; *Wrice*, 2012 IL 111860, ¶ 50 (applying a *de novo* standard of review to the State's argument concerning lack of prejudice to the defendant, since these "arguments raise purely legal issues").

¶ 35      *De novo* consideration means that we perform the same analysis that a trial judge would perform. *In re N.H.*, 2016 IL App (1st) 152504, ¶ 50 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 36                                              IV. Cause

¶ 37        As we noted above, under the cause-and-prejudice test, a defendant must first establish cause for his or her failure to raise the claim earlier. *Edwards*, 2012 IL 111711, ¶ 22 (citing *Pitsonbarger*, 205 Ill. 2d at 459). Defendant argues that he established cause because he could not have raised claims based on *Miller* in his original 2008 petition, when *Miller* was not even decided until 2012. See also *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 48 (defendant was not barred from raising his challenge on appeal from the denial of leave to file a successive petition, where "*Miller* was not available for earlier postconviction proceedings"); *People v. Sanders*, 2016 IL App (1st) 121732-B, ¶ 19 (*Miller* "changed the law and give postconviction petitioners cause for failing to raise the issue in proceedings that preceded" it).

¶ 38        In addition, in 2014, the Illinois Supreme Court held in *People v. Davis*, 2014 IL 115595, ¶¶ 28, 42, both that *Miller* applied retroactively and that "*Miller*'s new substantive rule constitutes 'cause' because it was not available earlier." Similarly, the United States Supreme Court held two years later that *Miller* applied retroactively. *Montgomery v. Louisiana*, 577 U.S. ___, ___, 136 S. Ct. 718, 735-36 (2016) (after *Miller*, juveniles who received mandatory or automatic life without parole "must be given the opportunity to show their crime did not reflect irreparable corruption" as opposed to transient immaturity).

¶ 39        On appeal, the State did not argue that defendant failed to establish cause. Instead, the State argued that "irrespective of whether or not defendant can show the requisite 'cause,' he cannot establish any 'prejudice' " because (1) *Miller* does not apply to defendant's sentence of a certain number of years and (2) Illinois courts have previously rejected other constitutional challenges to the automatic transfer provision.

¶ 40        Thus, we find that defendant has established cause and proceed to consider prejudice.

¶ 41                            V. 50-Year Sentence

¶ 42        Defendant argued that his 50-year sentence violates the eighth amendment's ban on cruel and unusual punishments, particularly in light of the fact that our legislature recently changed the law concerning juveniles and firearm enhancements. When defendant was sentenced, defendant's firearm enhancement was mandatory. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002). However, effective in 2016, the legislature specifically added a provision, so that firearm enhancements were no longer mandatory for juvenile defendants. Pub. Act 99-69, § 10 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105(b)); Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (same).

¶ 43        When defendant was sentenced, he was subject to a sentencing range with a minimum of 45 years and a maximum of natural life. If defendant committed the same offense today, the minimum would be only 20 years (730 ILCS 5/5-4.5-20(a) (West 2018)), while the maximum would still be natural life.[9] In addition, if defendant was sentenced today, he would be eligible for parole review after serving only 20 years. Pub. Act 100-1182, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)). *People v. House*, 2019 IL App (1st) 110580-B, ¶ 62 (discussing this act), *petition for leave to appeal granted*, No. 125124 (Ill. Jan. 29, 2020).

---

[9] The maximum sentence for first degree murder is typically 60 years. 730 ILCS 5/5-4.5-20(a) (West 2018). However, in its discretion, the trial court may impose on a juvenile a firearm enhancement of 25 years or up to a term of natural life. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2018) ("if, during the commission of the offense, the person personally discharged a firearm that proximately caused *** death *** 25 years or up to a term of natural life shall be added to the term of imprisonment"); 730 ILCS 5/5-4.5-105(b) (West 2018) (the trial court may, in its discretion, impose or decline to impose on a juvenile any otherwise applicable firearm enhancement).

¶ 44   Our supreme court specifically directed us to reconsider our finding under the eighth amendment, *Miller*, and *Buffer*.

¶ 45   "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller*, 567 U.S. at 469 (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). "That right," the United States Supreme Court has explained, " 'flows from the basic "precept of justice that punishment for crime should be graduated and proportioned" ' to both the offender and the offense." *Miller*, 567 U.S. at 469 (quoting *Roper*, 543 U.S. at 560, quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)). "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010). "And we view that concept less through a historical prism than according to ' "the evolving standards of decency that mark the progress of a maturing society." ' " *Miller*, 567 U.S. at 469-70 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (opinion of Warren, C.J., joined by Black, Douglas, and Whittaker, JJ.)).

¶ 46   In *Miller*, 567 U.S. at 465, the United States Supreme Court found that mandatory life without parole for offenders under 18 years old violated the eighth amendment. The Illinois Supreme Court has since found that the reasoning of *Miller* "applies to discretionary sentences" as well. *People v. Holman*, 2017 IL 120655, ¶ 40; *Buffer*, 2019 IL 122327, ¶ 27 (*Miller* applies to juvenile life sentences, whether "mandatory or discretionary"). Our supreme court found that the key issue is not whether the sentence was mandatory or discretionary but whether a certain process was followed—namely, a sentencing hearing where youth and its attendant characteristics were considered. *Holman*, 2017 IL 120655, ¶¶ 37-38. Thus, life sentences for offenders under 18 years old, whether mandatory or

discretionary, violate the eighth amendment, if the trial court failed to specifically consider "some variant of the *Miller* factors." *Holman*, 2017 IL 120655, ¶¶ 40, 43-44.

¶ 47    In *Buffer*, 2019 IL 122327, ¶ 27, our supreme court clarified what constituted a life sentence for a juvenile offender. The *Buffer* court found that, for a juvenile, a *de facto* life sentence was a sentence over 40 years. *Buffer*, 2019 IL 122327, ¶¶ 40-41; *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶¶ 40-41. Thus, defendant's 50-year sentence, although discretionary, is considered a *de facto* life sentence under *Buffer*.

¶ 48    In the case at bar, defendant was 16 years old at the time of the offense. Thus, there is no question that the findings in *Miller* and *Buffer* regarding the eighth amendment apply to him, and that he is entitled to a sentence which took the *Miller* factors into account. *Holman*, 2017 IL 120655, ¶ 46.

¶ 49    Our supreme court has found that, under *Miller*, a juvenile defendant, such as defendant, may be sentenced to a *de facto* life sentence "only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. In the case at bar, this court already found on appeal that defendant was not beyond the possibility of rehabilitation and, therefore, reduced defendant's sentence to, what we believed at the time would be, less than a life sentence. *Jackson*, No. 1-04-3656, slip op. at 23. Although the trial court found that defendant was likely to commit another crime, its finding did not rise to the level of finding "irretrievable depravity" or "permanent corruption." *Holman*, 2017 IL 120655, ¶ 46.

¶ 50     Our supreme court has found that, before sentencing a juvenile to a *de facto* life sentence, the trial court must consider the defendant's youth and its attendant characteristics, which include:

> "(1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46.

In the case at bar, there is no evidence that the trial court considered this defendant's particular immaturity and impetuosity or peer pressure from the gang he belonged to.

¶ 51     Thus, defendant has established the prejudice needed to file his successive postconviction petition.

¶ 52     While we recognize that the relief following a denial to file under the Act ordinarily involves a remand to the trial court for further postconviction proceedings, the issue before us is a purely legal question that does not require the resolution of credibility disputes or the assessment of evidence, typically done in the first instance by the trial court. *Buffer*, 2019 IL 122327, ¶¶ 46-47 (declining to remand to the trial court for further postconviction proceedings after a first-stage dismissal, where a resentencing was required for a juvenile offender with a *de facto* life sentence); *Nieto*, 2016 IL App (1st) 121604, ¶ 57 (declining to remand after a first-stage dismissal, after this court vacated a juvenile offender's sentence).

Remanding a purely legal question to the trial court would be a waste of judicial resources. *Buffer*, 2019 IL 122327, ¶ 47 (declining to remand in light of both "judicial economy" and the particular issue raised in this appeal); *Nieto*, 2016 IL App (1st) 121604, ¶ 57 (declining to remand in light of "[t]he particular issue raised in this appeal"). Thus, we remand for resentencing.

¶ 53                            VI. Automatic Juvenile Transfer

¶ 54        In its supervisory order, our supreme court instructed us to reconsider only the portion of our opinion concerning defendant's *Miller* claim. Thus, we merely reiterate below what we found regarding defendant's second claim:

"Defendant also claims that the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2002)) violates due process, the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), and the eighth amendment (U.S. Const., amend. VIII).

The automatic juvenile transfer provision provides, in relevant part, that:

'(1)(a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 16 years of age and who is charged with: (i) first degree murder ***.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State.' 705 ILCS 405/5-130 (West Supp. 2015).

At the time of the offense in question, the provision provided, in relevant part, that:

18

'(1)(a) The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with first degree murder ***.

These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State.' 705 ILCS 405/5-130 (West 2002).

The key difference between the two provisions is that the former provision applied to 15-year-old minors, whereas the current provision applies only to minors who are 16 years or older. However, as we observed above, this difference has no effect on our case, because the minor in the instant case was 16 years old at the time of the offense.

On appeal, defendant argues that we should find that the Illinois Supreme Court's decision in *People v. Patterson*, 2014 IL 115102, was 'incorrectly decided.' In *Patterson*, our supreme court rejected due process challenges to the automatic transfer statute, as well as challenges made under the eighth amendment (U.S. Const., amend. VIII) and the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11). *Patterson*, 2014 IL 115102, ¶¶ 35, 89, 98, 100, 106. We decline defendant's invitation to find that *Patterson* was wrongly decided. *Wilson*, 2016 IL App (1st) 141500, ¶ 29 (applying *Patterson*, after the 2016 United States Supreme Court decision in *Montgomery*, 577 U.S. ___, 136 S. Ct. 718).[10],[11] *Jackson*, 2016 IL App (1st) 143025, ¶¶ 60-64."

---

[10]In his reply brief, defendant states that he "recognizes that this Court is bound by *Patterson*, but maintains, given the continuing evolving law in this area and in order to preserve this issue for further

¶ 55                                CONCLUSION

¶ 56          On this appeal, defendant challenged the trial court's denial of his motion for leave to file a successive petition. His motion and petition had argued (1) that a 50-year sentence for a minor violates the eighth amendment's prohibition against cruel and unusual punishment (U.S. Const., amend. VIII), pursuant to recent decisions concerning minors, and (2) that the automatic transfer provision of Illinois's Juvenile Court Act of 1987 (705 ILCS 405/5-130 (West 2002)) violates due process, the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), and the eighth amendment (U.S. Const., amend. VIII).

¶ 57          Previously, we did not find persuasive defendant's claims. However, the supreme court directed us to reconsider our finding with respect to defendant's first claim. Having reconsidered in light of *Buffer* as directed, we find that defendant established the cause and prejudice needed to file a successive postconviction petition on his first claim. For the reasons explained above, we reverse and remand to the trial court for resentencing.

¶ 58          Reversed and remanded for resentencing.

---

appeals, that *Patterson* was wrongly decided." Similarly, this court respects the need to preserve the issue for further appeal, while remaining bound to apply *Patterson*.

[11] The *Wilson* case was subsequently consolidated with another case and affirmed *sub. nom People v. Hunter*, 2017 IL 121306.

**No. 1-14-3025**

| | |
|---|---|
| **Cite as:** | *People v. Jackson*, 2020 IL App (1st) 143025 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 03-CR-22273; the Hon. Noreen Valeria Love, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Yasemin Eken, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Margaret G. Lustig, Assistant State's Attorneys, of counsel), for the People. |