2020 IL App (1st) 191498-U
Order filed: November 6, 2020

FIRST DISTRICT
FIFTH DIVISION

No. 1-19-1498

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 9388 |
| | ) | |
| HOWARD KELLER, | ) | Honorable |
| | ) | William H. Hooks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the denial of both defendant's request for leave to file a successive postconviction petition and his motion to reconsider that decision, and remand for further proceedings, where defendant satisfied the requisite cause-and-prejudice test under the Post-Conviction Hearing Act with respect to the challenge he sought to raise pursuant to the proportionate penalties clause of the Illinois constitution.

¶ 2    Defendant-appellant, Howard Keller, appeals from an order of the circuit court denying his *pro se* request for leave to file a successive postconviction petition for relief under the Post–Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)), as well as from the denial

of a motion to reconsider that decision. For the following reasons, we reverse and remand for further proceedings.[1]

¶ 3    Following a jury trial, defendant was convicted of first degree murder, with the jury also finding that defendant personally discharged a firearm during the commission of the offense that proximately caused the victim's death. The shooting occurred in March 2000, when defendant was 22 years old. Defendant was then sentenced to 30 years' imprisonment on the first degree murder conviction, along with a consecutive term of 25 additional years' imprisonment for personally discharging the firearm, causing death. Defendant's conviction and sentence was affirmed upon direct appeal. *People v. Keller*, 1-02-3186 (2004) (unpublished order under Supreme Court Rule 23).

¶ 4    Defendant thereafter filed one previous, unsuccessful postconviction petition pursuant to the Act, as well as an unsuccessful petition seeking leave to file a successive petition. Finally, on January 31, 2017, defendant initiated the proceeding at issue here by filing another motion seeking leave to file another successive postconviction petition. Therein, defendant asserted that it was a violation of the eighth amendment of the federal constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois constitution (Ill. Const.1970, art. I, § 11) for the trial court to impose a *de facto* life sentence upon defendant for crimes he committed when he was 22 years old. Defendant thereafter filed a motion to amend his petition to include an affidavit executed by his mother. The circuit court denied leave to file his successive postconviction petition in a written order entered on March 22, 2017.

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 5    Defendant thereafter mailed a motion to reconsider that decision on April 12, 2017 (filed April 21, 2017). It appears that no proceedings with respect to that motion were held prior to September 20, 2017, when defendant mailed a prior notice of appeal (filed September 26, 2017). On September 25, 2019, this court granted a motion for summary disposition in defendant's prior appeal (No. 1-17-2564), in which we dismissed that appeal and remanded the matter for further proceedings on defendant's still-pending motion to reconsider.

¶ 6    The circuit court thereafter denied the motion to reconsider in a written order entered on June 4, 2019. Defendant filed a notice of appeal on June 25, 2019, in which he sought reversal of both the March 22, 2017, order denying leave to file his most recent, successive postconviction petition, as well as the June 25, 2019, order denying his motion to reconsider that decision.

¶ 7    The Act "provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial" which "is not a substitute for an appeal, but rather, is a collateral attack on a final judgment." *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act provides that "[o]nly one petition may be filed *** without leave of the court." 725 ILCS 5/122-1(f) (West 2018). Nevertheless, there are "two bases upon which the bar against successive proceedings will be relaxed." *Edwards*, 2012 IL 111711, ¶ 22. "The first basis for relaxing the bar is when a petitioner can establish 'cause and prejudice' for the failure to raise the claim earlier." *Id*. (quoting *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The cause-and-prejudice test is now codified in the Act. 725 ILCS 5/122-1(f) (West 2018). Second, a colorable claim of "actual innocence" will permit a successive postconviction petition. *People v. Wideman*, 2016 IL App (1st) 123092, ¶ 40 (citing *Edwards*, 2012 IL 111711, ¶ 23). Thus, in order to file a successive petition, the defendant's petition must satisfy the cause-and-prejudice test or it must state a colorable claim of actual innocence. *People v. Jackson*, 2016 IL App (1st) 143025, ¶ 19. "This

standard is higher than the normal first-stage 'frivolous or patently without merit' standard applied to initial petitions. [Citations.]" *Id.*

¶ 8    In this case, defendant asserts that he has satisfied the cause-and-prejudice test. "It is the defendant's burden to demonstrate both cause and prejudice for each claim raised in his successive petition." *People v. Thompson*, 383 Ill. App. 3d 924, 929 (2008). The Act provides that "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018).

¶ 9    "[A] defendant's *pro se* motion for leave to file a successive postconviction petition will meet the section 122-1(f) cause and prejudice requirement if the motion adequately alleges facts demonstrating cause and prejudice." *People v. Smith*, 2014 IL 115946, ¶ 33. "To meet the cause-and-prejudice test *** requires the defendant to submit 'enough in the way of documentation to allow a circuit court to make that determination.' [Citation.] *Id.* ¶ 35. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petition fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings. [Citations.]" *Id.* A petitioner need only set out a *prima facie* case at the leave-to-file stage. *People v. Bailey*, 2017 IL 121450, ¶ 24. We review a trial court's ruling on a motion for leave to file a successive postconviction petition *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 10 In *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005), the Supreme Court found that the death penalty was unconstitutional as applied to minors. In *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court held that "[t]he Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Id*. at 82. Then, in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the Supreme Court concluded that the eighth amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders" convicted of homicide. In each case, the Supreme Court relied in part on the lesser moral culpability and greater rehabilitative potential of minors in support of its decisions, and "it is clear the United States Supreme Court in *Roper*, *Graham*, and *Miller* has provided juveniles with more constitutional protection than adults." *People v. Pacheco*, 2013 IL App (4th) 110409, ¶ 68.

¶ 11 However, *Miller* itself did not impose an outright ban on the imposition of a life sentence upon a juvenile convicted of homicide, let alone a ban on lengthy term-of-years sentences imposed upon juveniles. See, *Miller*, 567 U.S. 479-80 (refusing to completely foreclose the possibility that a life sentence could be constitutionally imposed upon a juvenile convicted of homicide). Rather, the Supreme Court held only that such a sentence could not be *mandated*, and that before a life sentence could be properly imposed, "mitigating circumstances" such as "an offender's youth and attendant characteristics" must be considered. *Id*. at 483, 489.

¶ 12 The Illinois Supreme Court has ruled that *Miller* applies to discretionary, as well as mandatory life sentences (*People v. Holman*, 2017 IL 120655, ¶ 40), and also to *de facto* life sentences, or sentences "that cannot be served in one lifetime" and have "the same practical effect on a juvenile defendant's life as would an actual mandatory sentence of life without parole" (*People v. Reyes*, 2016 IL 119271, ¶¶ 9-10).

¶ 13    Thus, while a juvenile offender may be sentenced to a natural life or *de facto* sentence of life imprisonment, before doing so the trial court must:

> "[D]etermine[ ] that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46.

¶ 14    Obviously, a number of these decisions involved analysis of the protections provided by the eighth amendment, while here we also address defendant's challenge brought pursuant to the proportionate penalties clause of the Illinois constitution. However, as our supreme court has indicated, the proportionate penalties clause provides "a limitation on penalties beyond those afforded by the eighth amendment." *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 69.

¶ 15    Furthermore, defendant—aged 22 at the time of the crimes to which he plead guilty—was not a "juvenile" offender. "Because defendant was an adult, *Miller* [and its progeny] does not apply directly to his circumstances." *People v. Harris*, 2018 IL 121932, ¶ 45.

¶ 16    Nevertheless, our supreme court specifically considered *Miller's* applicability to a young

adult defendant's proportionate penalties clause challenge in both *People v. Thompson*, 2015 IL 118151, and *Harris*, 2018 IL 121932. It is true that, in neither case did our supreme court expressly accept the premise that the protections provided to juvenile offenders by *Miller* and its progeny should be extended to young adult offenders; however, the court did not explicitly reject that assertion either. Moreover, in both cases our supreme very explicitly *did* indicate that a postconviction proceeding would be an appropriate venue to address that very issue. *Thompson*, 2015 IL 118151, ¶ 44; *Harris*, 2018 IL 121932, ¶ 48.

¶ 17    More recently, another panel of this court concluded that a postconviction petition was improperly dismissed at the first stage, and explicitly concluded that a mandatory natural life sentence violated the proportionate penalties clause as applied to a defendant who was 19-years-old at the time he committed murder, pursuant to *Miller* and its progeny. *People v. House*, 2019 IL App (1st) 110580-B, ¶ 65, *appeal allowed,* 140 N.E. 3d 231 (Ill. 2020).

¶ 18    From the above discussion, it is evident that defendant established cause where his original postconviction petition was filed and resolved before *Miller* and its progeny were ever decided. *People v. Davis*, 2014 IL 115595, ¶ 42. (a defendant establishes cause when the legal basis for his claim was not available to him when he filed his initial petition).

¶ 19    Turning then to prejudice, it is also clear that defendant's request to file a successive petition asserting an eighth amendment challenge to his sentence was properly rejected below, as any such claim would fail as a matter of law. *Harris*, 2018 IL 121932, ¶ (foreclosing such challenges raised by young-adult offenders under the eighth amendment); *People v. Daniels*, 2020 IL App (1st) 171738, ¶ 26 (recognizing same under similar circumstances).

¶ 20    Thus, we are left to consider whether defendant's *pro se* motion for leave to file a successive postconviction petition raising an as-applied challenge to his sentence under the

proportionate penalties clause of the Illinois constitution, along with the attached documentation, has adequately alleged a *prima facie* case of prejudice such that further proceedings on that claim are warranted. *Supra*, ¶ 5.

¶ 21    "Young adult defendants are not entitled to a presumption that *Miller* applies to them." *People v. Ruiz*, 2020 IL App (1st) 163145, ¶ 52. "[U]nder *Harris*, a young adult defendant must plead and ultimately prove, that his or her individual characteristics require the application of *Miller*." *Id*. The petition and accompanying documents must contain sufficient facts to justify further proceedings. To do so, "the defendant must show 'how the evolving science on maturity and brain development that helped form the basis for the *Miller* decision applies to defendant's specific facts and circumstances.' " *Id*. ¶ 52 (quoting *Harris*, 2018 IL 121932, ¶ 46).

¶ 22    In defendant's motion and in his proposed successive petition, he asserted that he grew up in an area of Chicago "infested with gangs and alcohol and drug abusers where he was subjected to negative influences, and crime producing settings." At age 9 his uncle was stabbed to death, at 11 his favorite aunt was mugged, and his cousin was shot when defendant was 14. He was also exposed to his parents' alcohol use at a young age, and he was shaped by social rules legitimizing irresponsible behavior such as carrying weapons for protection and using alcohol as a coping mechanism. Defendant also asserted that he started drinking alcohol at age 14, and ran away from home when he was 15. He did not finish high school, and was a gang member with older members who had a large influence over defendant. The violence that surrounded him had a "profound effect" on defendant, leading him become "hyper-vigilant" and respond "hyper-aggressively" to any perceived threat.

¶ 23    All of these factors left defendant "very immature at age 22," when he committed the murder. As defendant noted in his petition, his trial included the presentation of evidence that he

had obtained the gun he used in the murder after his friend was shot a few weeks prior. Defendant had also been drinking extensively on the day of the shooting, and he then walked to a liquor store in an unfamiliar area to purchase more alcohol. Taking the gun with him for protection, defendant's statement to police—introduced at trial—indicated that he only shot the victim when he panicked after seeing the victim make what defendant thought was a threatening movement.

¶ 24    In contrast to these "transient experiences synonymous with youthful immaturity," defendant's petition recounted defendant's subsequent history in prison. While incarcerated, defendant has remained gang-free, passed numerous drug tests, only had three minor disciplinary citations, and engaged in numerous educational opportunities, including graduating from barber college.

¶ 25    Defendant's motion and proposed petition also included extensive citation to and discussion of much of the relevant legal authority cited above, as well as citation to numerous articles and scientific studies suggesting that the brains of young adults continue to mature well into their mid-twenties, particularly among those exposed to alcohol at a young age. He also attached a number of exhibits in support of his claims, including portions of the trial transcripts, his presentence investigation report, an affidavit renouncing his gang membership, and his prison disciplinary and educational records.

¶ 26    Finally, defendant's mother confirmed many of defendant's claims in her affidavit, attached to the motion to amend the petition. She further opined that defendant was "irresponsible as a young person," had the "mentality of a 16 year old" at the time of the murder, and this immaturity "had a lot to do with the poor choices" defendant made. In contrast, she opined that defendant "has changed since being incarcerated. He has had time to evaluate his life and repent of his past."

¶ 27 As with an initial postconviction filing, in considering a motion for leave to file a successive petition, all well-pleaded facts and supporting affidavits are taken as true. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 25. Taken as a whole, we conclude that defendant's motion and supporting material satisfy the *prima facie* showing of prejudice prerequisites to the filing of a successive postconviction petition as to his proportionate penalties clause argument, and therefore his motion for leave to file a successive postconviction petition was improperly denied as to this claim. Consequently, we reverse the order denying the defendant's motion to file a successive postconviction petition, as well as the order denying reconsideration of that order, and remand the matter with directions to grant the defendant's motion and advance the petition for a second-stage proceeding solely on the defendant's claim that his 55-year sentence violated the proportionate penalties clause of the Illinois constitution.

¶ 28 In reaching this conclusion, we acknowledge that on appeal the State has raised a number of merit-based arguments against such a conclusion, specifically asserting that the decisions discussed above do not support extension of *Miller* to offenders 21 years and older, and that, in any case, defendant's petition was not supported by sufficient facts in support of his attempt to apply *Miller* and its progeny to this case. However, we find these arguments to be "more appropriate to the second stage of postconviction proceedings, where both parties are represented by counsel, and where the petitioner's burden is to make a substantial showing of a constitutional violation." *People v. Tate*, 2012 IL 112214, ¶ 22.

¶ 29 Finally, we note that our finding in no way expresses an opinion on the ultimate merits of the factual and legal assertions contained in defendant's postconviction petition, or on whether defendant will ultimately prevail on his postconviction claim. See *People v. Hodges*, 234 Ill. 2d 1, 22 (2009).

¶ 30    For the foregoing reasons, the judgment of the circuit court is reversed, and this cause is remanded for further proceedings consistent with this order.

¶ 31    Reversed and remanded with directions.